IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**SCOTT SOUTULLO**     **PLAINTIFF**

V.     NO. 3:19-CV-148-DMB-RP

**TYLER L. SMITH, et al.**     **DEFENDANTS**

## ORDER

The law of interpleader actions in this circuit has long been that in the absence of extraordinary circumstances, priority to an interpleader fund should be determined as of the date the action is commenced. But for centuries longer, interpleader has stood as an action in equity. Because interpleader relief is fundamentally equitable relief, extraordinary circumstances arise when equity demands the determination of priority at a later point. And because the interpleader fund in this case changed substantially from the date this action was commenced, extraordinary circumstances require that priority to the fund be determined as of the date of the operative interpleader complaint. As a result, the government's motion for summary judgment claiming priority to the fund will be granted, and Philip Neilson's motion for summary judgment asserting a competing priority claim will be denied.

### I
### Procedural History

On December 15, 2015, Scott Soutullo, co-counsel of Tyler L. Smith in certain BP oil spill cases, filed a "Complaint for Interpleader" in the Circuit Court of Lafayette County, Mississippi. Doc. #17-2. The complaint stated:

> This is an interpleader of funds that have become payable to Attorney Tyler L. Smith and/or Tyler L. Smith & Associates, PLLC by virtue of being owed fees in certain cases related to the BP oil spill claims process. Being that these funds have been tendered to Scott Soutullo, Esquire to hold for Attorney Tyler L. Smith and/or

> Tyler L. Smith & Associates, PLLC, and being that certain parties have laid claims and/or stated an interest in these funds and other funds to possibly be received in the future, Stakeholder hereby places these funds in the custody of the Circuit Clerk of Lafayette County in an action where those parties who may have an interest may state their claim to this Court.
>
> Stakeholder will interplead all additional future attorney's fees which would be due to Attorney Tyler L. Smith and/or Tyler L. Smith & Associates, PLLC into this action as they are received.

*Id.* at ¶ 2–3 (internal paragraph number omitted).

The complaint further alleged:

> The sums received and tendered to the Court thus far total $3,026.95. It is expected that there will be additional funds received in the future that would become due and payable to Attorney Tyler L. Smith and/or Tyler L. Smith & Associates, PLLC as additional, future fees generated in the BP oil spill claim process. It is the Stakeholder's understanding that the claimants have putative claims on Attorney Tyler L. Smith and/or Tyler L. Smith & Associates, PLLC's future potential funds.

*Id.* at ¶ 25.

On May 14, 2019, after the parties' filing of multiple amended pleadings and after the addition of an intervening interpleader (Cunningham Bounds, LLC),[1] Soutullo filed a "Fourth Amended Complaint for Interpleader." Doc. #2. The fourth amended complaint contains a description of the interpleader fund identical to that in the initial complaint (and the intervening amended pleadings) but refers to an amount tendered to the Court of $492,678. *Id.* at ¶¶ 2–3, 38. The pleading names twenty-six claimants: (1) Tyler Lee Smith; (2) Tyler L. Smith & Associates, PLLC; (3) Karen Smith; (4) George Haymans, DBA Haymans' Capital Management ("Haymans"); (5) John Green; (6) Michael Joe Cannon; (7) Don Davis; (8) Mike Huggins; (9) Frank Yerger; (10) Robert Grantham; (11) Calvin Land; (12) Jeff Irvin; (13) Jason Shelton; (14) Meriwether Shelton; (15) Beacon Holdings, LLC; (16) Ray Poole; (17) Adrianne Lovelady; (18)

---

[1] Cunningham Bounds, LLC, moved to intervene and interplead funds derived from a fee-sharing agreement with Smith. *See* Doc. #17-37. Cunningham Bounds' motion to intervene utilized the same language as Soutullo's initial interpleader complaint to describe the interpleader fund. *Id.* at ¶ 1.

2

Dwight Lovelady; (19) Tracy Williams; (20) Ann McCain; (21) Lawrence Hoskins; (22) Danny A. Drake; (23) James Irvin; (24) Scott Soutullo; (25) Cunningham Bounds, LLC; and (26) the United States of America ("government"), named as the "Northern District of Mississippi U.S. Attorney." *Id.* at ¶ 5–30.

The government removed the interpleader action to the United States District Court for the Northern District of Mississippi.[2] Doc. #1. Shortly after removal, Haymans and Land filed an amended[3] motion for summary judgment seeking a declaration that their claims against the interpleader fund had priority over the other claims. Doc. #26 at 1. While the motion for summary judgment was pending, Philip Neilson, with leave of the Court,[4] filed an intervenor complaint asserting a claim to the funds. *See* Doc. #74.

This Court denied Haymans and Land's motion for summary judgment because they failed to show there was no genuine issue of material fact on the issue of priority. Doc. #83 at 9. Following this ruling, Neilson and the government filed cross-motions for summary judgment regarding their competing claims to priority. Docs. #84, #97. Huggins and Green joined Neilson's motion. Docs. #111, #112. Haymans, Cannon, Poole, Davis, Hoskins, Grantham, Yerger, McCain, Land, Shelton, Dwight Lovelady, Adrianne Lovelady, and Williams joined the government's motion. Docs. #98, #100, #101, #102, #104, #106, #107, #108, #109.[5]

---

[2] Removal was based on 28 U.S.C. § 1444, which authorizes removal in interpleader cases with the United States as a claimant.

[3] Their earlier motion for summary judgment was denied without prejudice for failure to comply with the Local Rules of this Court. Doc. #25.

[4] Doc. #73.

[5] The various parties also joined the briefing in support of the cross-motions for summary judgment. Some of these joinders came after the relevant briefing deadlines and, therefore, may be properly denied. *See generally Tarlton v. Exxon*, 688 F.2d 973, 977 n.4 (5th Cir. 1982) ("A party may not belatedly join another litigant's motion …."). However, because the joinders have no bearing on the disposition of the relevant motions, the Court need not address this issue.

## II
## Summary Judgment Standard

A court shall enter summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party." *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (cleaned up).

The "party seeking summary judgment always bears the initial responsibility of demonstrating the absence of a genuine issue of material fact." *Id*. (alterations omitted). When the movant would not bear the burden of persuasion at trial, he may satisfy his initial summary judgment burden "by pointing out that the record contains no support for the non-moving party's claim." *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 997 (5th Cir. 2019). If the moving party satisfies his initial burden, the nonmovant "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Jones*, 936 F.3d at 321 (cleaned up).

Cross-motions for summary judgment "must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. If there is no genuine issue and one of the parties is entitled to prevail as a matter of law," summary judgment is appropriate. *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538–39 (5th Cir. 2004) (footnote omitted).

## III
## The Interpleader Fund

"There are two types of interpleader: rule interpleader pursuant to Fed.R.Civ.P. 22 and statutory interpleader under 28 U.S.C. § 1335. They differ in jurisdictional requirements but not in substance." *Auto Parts Mfg. Miss., Inc. v. King Constr. of Hous., L.L.C.*, 782 F.3d 186, 192 (5th Cir. 2015). This is a rule interpleader case.

4

Whether rule or statutory, an interpleader action generally involves two stages. *Rhoades v. Casey*, 196 F.3d 592, 600 (5th Cir. 1999). At the first stage, the court must decide whether interpleader is proper by asking whether "there is a single fund at issue and whether there are adverse claimants to that fund." *Id*. If these requirements are satisfied, the court must "make a determination of the respective rights of the claimants." *Id*.

This Court previously determined that interpleader is proper in this case. Doc. #121. While correct, the determination did not identify the single fund at issue in this case. Because the identity of the fund will, for the reasons explained below, impact the priority of the claims, the Court takes the opportunity to address this issue now.

"[C]ourts and authorities have uniformly held that a single, identifiable fund is a prerequisite to an interpleader action." *Wausau Ins. Cos. v. Gifford*, 954 F.2d 1098, 1100 (5th Cir. 1992) (collecting authorities). Funds which "consist of uncertain amounts, arrived at as the result of opaque internal accounting procedures," do not satisfy the "identifiable" requirement. *N.Y. Life Ins. Co. v. Singh*, No. 14-CV-5726, 2017 WL 10187670, at *5 (E.D.N.Y. Mar. 8, 2017) (citing *Wausau*, 954 F.2d at 1101); *see Wausau*, 954 F.2d at 1101 (in finding fund was not identifiable, noting "[t]here is no way the exact amount of the fund in question can be formulated").

The fund at issue in an interpleader action is defined by the operative interpleader complaint. *See JSI Commc'ns v. Travelers Cas. & Sur. Co. of Am.*, 807 F.3d 725, 728 (5th Cir. 2015) ("According to the amended complaint for interpleader, the stake in the interpleader action was the 'proceeds of the contract between McMillan–Pitts and Tackett'—$19,445.16.") (alterations omitted). Complaints, like most other legal documents, should be interpreted by reference to their plain meaning. *See Ruiz v. Brennan*, 851 F.3d 464, 471 (5th Cir. 2017) (considering plain language of complaint to determine nature of claim). Because the operative

5

interpleader pleading here is the fourth amended complaint, the interpleader fund is properly defined by the plain language of this document.

The fourth amended complaint, like the initial interpleader complaint, contains the following description of the interpleader action:

> This is an interpleader of funds that have become payable to Attorney Tyler L. Smith and/or Tyler L. Smith & Associates, PLLC by virtue of being owed fees in certain cases related to the BP oil spill claims process. Being that these funds have been tendered to Scott Soutullo, Esquire to hold for Attorney Tyler L. Smith and/or Tyler L. Smith & Associates, PLLC, and being that certain parties have laid claims and/or stated an interest in these funds and other funds to possibly be received in the future, Stakeholder hereby places these funds in the custody of the Circuit Clerk of Lafayette County in an action where those parties who may have an interest may state their claim to this Court.

Doc. #2 at ¶ 2.

The first sentence of the paragraph, by describing the funds as "funds that have become payable to [Smith and his firm] by virtue of being owed fees in certain cases related to the BP oil spill claims process," lends itself to two possible interpretations. Under the first interpretation, the fourth amended complaint defines the interpleader fund as funds that were payable to Smith (or his firm) *as of May 14, 2019*, the date the pleading was filed, with future funds to be added through an amended interpleader complaint. Under the second interpretation, the fund encompasses funds that were payable to Smith or his firm as of the date of the fourth amended complaint's filing *and* any funds that would become payable to Smith in the future.

However, the paragraph's second sentence, which distinguishes between the funds received by the interpleader for payment to Smith and "other funds to possibly be received in the future," makes clear that the intended scope of the interpleader action is those funds which were

in possession of the interpleader *and* payable to Smith or his firm at the time-of-filing.[6] This interpretation is supported both by the next paragraph, which states that future payable attorney's fees would be "interplead[ed]" rather than deposited with the Court,[7] and the simple fact that an interest in a possible claim for an uncertain amount of attorney's fees would not be an "identifiable" fund. *See Wausau*, 954 F.2d 1098 at 1100–01; *cf. Murphy v. Travelers Ins. Co.*, 534 F.2d 1155, 1159 (5th Cir. 1976) ("An inchoate, uncertain claim for attorney's fees … against the general assets of a party rather than specific, identifiable 'property' is not a proper subject for interpleader relief.").[8] Accordingly, the scope of the interpleader fund in this case is those funds which were in possession of the interpleader *and* payable to Smith or his firm as of May 14, 2019.

## IV
## Factual Background

The relevant facts in this case are undisputed.[9]

Neilson asserts an interest in the interpleader funds based on a March 13, 2019, $22,200 state court judgment premised on Smith's alleged breach of contract. Doc. #64.

Green and Huggins assert claims based on breaches of promissory notes secured by Smith's interests in attorney's fees based on BP claims. *See* Doc. #17-31 at 5; Doc. #17-32 at PageID

---

[6] Soutullo did not consistently seek leave to interplead additional funds. Ordinarily, he filed "notices" adding funds to the interpleader case. *See, e.g.*, Doc. #17-38. The fourth amended complaint, however, was filed after Soutullo "identified additional funds that need[ed] to be included in the approximate sum of funds tendered to the Court thus far." Doc. #17-136 at 2. Regardless, Soutullo's "notice" practice does not alter the plain language of his fourth amended complaint.

[7] *See* Doc. #2 at ¶ 3.

[8] While the initial interpleader complaint was filed in Mississippi state court, the Mississippi Supreme Court "has looked to the comparable federal rule for guidance" in interpreting Rule 22. *First Nat'l Bank of Vicksburg v. Middleton*, 480 So. 2d 1153, 1156 (Miss. 1985).

[9] A determination of rights in an interpleader action may be made through summary judgment if there are no genuine issues of material fact. *Rhoades*, 196 F.3d at 600.

7

316.[10]

The government's claim derives from a restitution order entered in this Court after Smith pled guilty to one count of wire fraud for having "used false material misrepresentations to induce individuals to provide him with loans, including but not limited to, presenting victims and lenders with a list of BP Claims and [fraudulently] claiming that he had a valuable interest in the attorney's fees related to the BP Claims." See Doc. #83 at 4–5. This restitution order, which as explained in this Court's previous summary judgment order was perfected on November 3, 2016,[11] provides for restitution in the amount of $1,573,351.39, to be distributed on a pro rata basis as follows:

- $155,900 for Land
- $165,000 for McCain
- $262,000 for Yerger
- $59,000 for Grantham
- $150,00 for Poole
- $158,000 for Haymans
- $266,845 for Davis
- $128,433.73 for Cannon
- $80,000 for Hoskins
- $10,000 for Soutullo
- $7,500 for Adrianne and Dwight Lovelady
- $33,500 for Shelton
- $97,172.66 for Williams

*Id.* at 5.

It is undisputed that the government's security interest, which exceeds the fund in interpleader by approximately a million dollars, was perfected before any other claim at issue in this case.[12]

---

[10] Huggins has cited no evidence supporting the breach on which his claim is based. He cites only to his answer in state court which is, of course, not evidence. However, because the government has not disputed Huggins' claim and because Huggins would not be entitled to relief even if this factual assertion is credited, the Court will consider the statement regarding the nature of his claim for the purpose of deciding the cross-motions for summary judgment.

[11] *See* Doc. #83 at 7.

[12] Haymans asserts this position without waiving its right to appeal the issue. *See* Doc. #98.

## V
## Analysis

Interpleader actions ordinarily arise from diversity jurisdiction and, therefore, are subject to the *Erie*[13] mandate to apply the substantive law of the forum state. *See Mead Corp. v. Abeles*, 530 F.2d 38, 39 (5th Cir. 1976). However, *Erie* "is not controlling when the interpleader action involves federal law or the United States is a party." 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1713 (3d ed. 2019). Rather, "federal law determines the priority of competing federal and state-created liens." *FamilyFirst Bank v. Kusek*, 657 F. Supp. 2d 258, 262 (D. Mass. 2009). In such cases, "[a]bsent provision to the contrary, priority for purposes of federal law is governed by the common-law principle that the first in time is the first in right." *U.S. ex rel. I.R.S. v. McDermott*, 507 U.S. 447, 449 (1993) (quotation marks omitted).

The parties agree that if the government's lien is considered for the purpose of the priority analysis, it is entitled to the fund by virtue of the "first in time" rule. There is also no dispute that if priority is measured as of the date of the initial interpleader complaint, a pro rata distribution would likely be warranted. *See generally Hebel v. Ebersole*, 543 F.2d 14, 16 (7th Cir. 1976) ("The case at bar involves neither secured obligations nor a proceeding in bankruptcy. The parties' claims to the fund are of the same nature, and we approve the district court's pro rata distribution."). The question, therefore, is whether priority must be determined at the time the initial interpleader complaint was filed or at an alternate time. The answer to this question begins, but does not end, with the Second Circuit's decision in *Avant Petroleum, Inc. v. Banque Paribas*, 853 F.2d 140 (2d Cir. 1988), and the Fifth Circuit's decision in *White v. F.D.I.C.*, 19 F.3d 249 (5th Cir. 1994), which adopted *Avant Petroleum*'s reasoning.

---

[13] *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

### A. The *Avant Petroleum* and *White* Decisions

In *Avant Petroleum*, the Second Circuit addressed a district court interpleader decision which granted priority to Banque Paribas based on a perfected security interest which lapsed during the pendency of the interpleader action. 853 F.2d at 141. In holding that the post-filing lapse did not alter the priority determination, the Second Circuit adopted the following statement of the district court below:

> Paribas was only prevented from taking action to obtain possession of the funds at that time because the Court had acquired custody of them pending determination of the rights of the respective claimants. The Court can be said to have taken custody of the money for the benefit of the rightful owner, creating a trust for the purpose of preserving the funds and thereby securing the rightful owner's claim to them.
>
> To allow the subsequent lapse of its perfections, due to its failure to file continuation statements, to divest Paribas of its superior interest in the funds would be to penalize it for the delay in collection that was forced on it by the initiation of a court proceeding. This would create the bizarre result that the very act of setting up the "trust" in order to protect and preserve property for the benefit of its rightful owner would be the indirect cause of that rightful owner losing its rights to the property. Such an outcome is not only inequitable, but it is also inconsistent with the notion that the funds are held by the Court pending determination of the rightful owner at the time of the interpleader.
>
> In a sense, it might be said that Paribas required no further security interest or perfection because it had already asserted its interest in the funds at a time when its interest was valid and controlling.

*Id*. at 145 (alteration omitted). Based on these considerations, the Second Circuit held "that where an interpleader action is brought to have the court determine which of two parties has priority with respect to the interpleader fund, the court should normally determine priority as of the time the fund was created." *Id*. at 144.

In *White*, the Fifth Circuit considered an appeal from a district court interpleader decision which granted the FDIC priority based on "the actions of [the FDIC's predecessor in interest] subsequent to the initiation of the interpleader action." 19 F.3d at 251. The question presented on

10

appeal was "whether activity subsequent to the initiation of an interpleader action can give one claimant a right to the interpleader fund which is superior to that which he had at the time the interpleader was initiated." *Id*. at 251–52.

The Fifth Circuit provided a detailed summary of the *Avant Petroleum* decision and then, after noting that *Avant Petroleum* was "factually distinguishable from the present case," held that the decision's "*ratio legis* … is clearly applicable." *Id*. at 252. In this respect, the Fifth Circuit, quoting *Avant Petroleum*, held:

> Once money is deposited into the court's registry, the money is held by the court pending a determination of which party's claim is superior. In other words, "[t]he court can be said to have taken custody of the money for the benefit of the rightful owner, creating a trust for the purpose of preserving the funds and thereby securing the rightful owner's claim to them." Further, while the money remains in the custody of the court, a secured creditor is prevented from taking any action to enforce his claim. If we were to allow one claimant to obtain an advantage over the others while the interpleader action is pending, we "would create the bizarre result that the very act of setting up the 'trust' in order to protect and preserve the property for the benefit of its rightful owner would be the indirect cause of that rightful owner losing its rights in the property."

*Id*. at 252–53 (footnote omitted).

From that point, the Fifth Circuit observed that "[a]n objective of the interpleader action … is to determine the respective and relative rights of the parties asserting claims as of the date of the action was commenced. Allowing one party to enhance his claim while the other claimants patiently await a determination from the court would be inequitable, as well as inconsistent with this objective." *Id*. at 253. The panel thus held that "when an action in interpleader is brought, the court should, *absent extraordinary circumstances*, determine the relative priorities of all claimants as of the time that the interpleader was initiated." *Id*. (emphasis added). Because the district court determined the FDIC's priority based on post-initiation conduct, the Fifth Circuit reversed and remanded the case. *Id*.

11

## B. "Extraordinary Circumstances" Defined

In the years since *White*, neither the Fifth Circuit nor the Second Circuit appear to have addressed the circumstances under which a court should depart from the normal rule for determining priority. The Ninth Circuit, which has adopted a similar rule,[14] has not either. Thus, while it is clear a court should, under some circumstances, consider post-filing conduct, it is unclear what such circumstances would be sufficient. To define such circumstances, it is necessary to start from the Fifth Circuit's observation that "[a]n objective of the interpleader action, like that of any civil action, is to determine the respective and relative rights of the parties asserting claims as of the date the action was commenced." *White*, 19 F.3d at 253. But this is not the only purpose of interpleader actions.

The Fifth Circuit in *White* justified the time-of-filing rule by noting that the rule's application would avoid creating two inequitable results: (1) "[a]llowing one party to enhance his claim while the other claimants patiently await a determination from the court;" and (2) creating a situation where the very "act of [accepting a deposit] in order to protect and preserve the property for the benefit of its rightful owner would be the indirect cause of that rightful owner losing its rights in the property." 19 F.3d at 252–53. In this sense, the time-of-filing rule may best be understood as advancing two interpleader purposes. The first, as expressly recognized in *White*, is the purpose of determining interests as of the date an action is commenced. The second is the purpose of reaching an equitable division of property between claimants. *See* 7 Wright & Miller,

---

[14] *See Texaco, Inc. v. Ponsoldt*, 118 F.3d 1367, 1370 (9th Cir. 1997) ("We agree with the sound reasoning of both the Fifth and Second Circuits and hold that a district court must normally determine the priority of claims in an interpleader action as they existed at the time the action was initiated. This rule is consistent with logic and with our own indication that funds held in the court's registry, as interpleader funds are held, are not usually subject to attachment or garnishment."). A district court in the Eastern District of Pennsylvania advanced a broader standard, holding that because "[t]he interpleader statute contemplates litigation of rights which may accrue in the future[, t]he statute must … contemplate litigation of claims that become perfected during the law suit's pendency." *Fid. Bank v. Commonwealth Marine & Gen. Assur. Co., Ltd.*, 581 F. Supp. 999, 1018 (E.D. Pa. 1984). To the extent this broader standard conflicts with the "extraordinary circumstances" language of *White*, it is properly disregarded.

supra, § 1702 (While "[i]nterpleader originally was designed to protect the stakeholder," "the device … can be used to protect the claimants by bringing them together in one action and reaching an equitable division of a limited fund.").

Because it is the notion of equity that goes to the heart of interpleader,[15] it follows that a modification of the time-of-filing rule may be warranted when applying the rule would result in an inequitable division of property between the claimants and when such inequity outweighs the ordinary purpose of determining rights at the time of filing. *See generally Bricks Unlimited, Inc. v. Agee*, 672 F.2d 1255, 1261 (5th Cir. 1982) ("In determining the order of distribution of … interpleaded funds, we sit as a court of equity, and possess the remedial flexibility of a chancellor in shaping our decree so as to do complete equity between the parties."); *cf. Wilborn v. Dep't of Health & Hum. Servs.*, 49 F.3d 597, 600 (9th Cir. 1995) ("While we affirm the general applicability of the 'retrieval rule,' we hold that in the peculiar facts of this case, a mechanical application of that rule would thwart, rather than advance, the purpose of the Privacy Act."), *abrogated on other grounds by Doe v. Chao*, 540 U.S. 614, 618 (2004).

### C. Extraordinary Circumstances in this Case

The government, citing *Hussain v. Boston Old Colony Insurance Co.*, 311 F.3d 623 (5th Cir. 2002), argues that extraordinary circumstances exist where, as here, a state court interpleader action is removed to federal court by the United States. Doc. #94 at 4–5. The government further contends that extraordinary circumstances exist because the fund at issue here "was subject to increase until such time as the stakeholders' liability was completely exhausted." *Id*. at 6.

First, beyond the citation to *Hussain*, the government offers no argument as to how or why

---

[15] *See Killian v. Ebbinghaus*, 110 U.S. 568, 572 (1884) (interpleader relief is "equitable relief"); *First Nat'l Bank of Fort Worth v. United States*, 633 F.2d 1168, 1172 (5th Cir. 1981) (interpleader actions are "equitable in nature"); Ralph V. Rogers, *Historical Origins of Interpleader*, 51 Yale L.J. 924, 950 (1942) (tracing equitable roots of interpleader back to the 1450s).

13

removal of a state court interpleader action involving the United States should be considered an extraordinary circumstance. The removal of a case has no bearing on the equitable division of property. And no case law, including *Hussain*, supports this assertion.

In *Hussain*, the district court determined the priority of the government's lien based on tax assessments which occurred between 1992 and 1994, well before both the December 8, 2000, request for interpleader relief in state court and the January 17, 2001, removal of the case to federal court.¹⁶ *See Hussain v. Bos. Old Colony Ins. Co.*, 170 F. Supp. 2d 663, 672 (E.D. La. 2001). The only opinion this Court has found addressing the issue held that priority in an interpleader case removed by the government should be determined based on the date the *state court* case was initiated. *Sch. Bd. of Broward Cnty. v. J.V. Constr. Corp.*, No. 03-60005, 2004 WL 1304058, at *8 (S.D. Fla. Apr. 23, 2004). Accordingly, the government's removal of this case does not rise to the level of an extraordinary circumstance to alter the priority analysis.

The government's second argument—that the priority determination should be altered when the fund is "subject to increase"—is incorrect as stated. In *White*, the Fifth Circuit applied the time-of-filing rule even though the interpleader fund, which consisted of installment payments on a promissory note, increased during the pendency of the litigation. *See* 19 F.3d at 251, 253 ("In September of 1990, Southwest amended its claims in interpleader and deposited the 1990 note installment into the court's registry."). However, the concerns about a changing fund are well-taken, at least in a case such as this.

To understand the extraordinary circumstances in this case, it is necessary to distinguish between two types of changes to an interpleader action. First, there are changes like the addition

---

¹⁶ While the government in *Hussain* filed a notice of its lien on January 9, 2001, the Fifth Circuit noted that "[i]n this case the point at which the [government] filed its lien does not affect the priority of claims adjudicated here." 311 F.3d at 628 n.2.

of the installment payment in *White*, which grow the amount on deposit but which do not change the nature of the fund. Then, there are changes to the definition of the fund itself, such as where an interpleader seeks to deposit funds which "are ancillary … and separate from" the initial interpleader fund. *See Wachovia Bank, Nat'l Ass'n v. Ming Tien*, No. 04-20834, 2009 WL 10669111, at *5 (S.D. Fla. May 14, 2009).

When there has been no change to the definition of a fund, the equitable concern identified in *White*—that litigants to an interpleader action should not lose priority rights by waiting for an interpleader determination—will almost certainly justify applying the time-of-filing rule. Where, however, the fund itself has changed, the concern that a claimant will lose a rightful claim while waiting for a determination of the fund is inapplicable for the simple reason that the fund as amended (the fund for which priority is to be determined) is not the same fund for which the litigant was awaiting determination. *See Jones, Waldo, Holbrook & McDonough v. Cade*, 510 F.3d 1277, 1280 (10th Cir. 2007) ("[T]he court's judgment in an interpleader action is limited to the fund in question unless a party has asserted a compulsory counterclaim."). In contrast, applying the time-of-filing rule to an interpleader case where the fund has changed would create the bizarre effect of freezing priority rights to a fund before the fund at issue was before the court. Thus, where priority rights to an amended fund were created before the amendment but after filing of the initial interpleader complaint, the time-of-filing rule would effectively cause the interpleader action to extinguish a rightful owner's rights in the fund, which is the very circumstance *White* sought to avoid. *See* 19 F.3d at 252–53; *see generally Texaco, Inc. v. Ponsoldt*, 118 F.3d 1367, 1369 (9th Cir. 1997) (interpleader actions should not "remove priority from claims which existed when the interpleader commenced").

Additionally, the objective of interpleader identified in *White*— "to determine the

15

respective and relative rights of the parties asserting claims as of the date the action was commenced"[17]—necessarily presupposes that the fund to be determined is the same fund which existed at the time of filing. Although the Fifth Circuit did not cite any authority for this general proposition, this language from *White* appears to have been adopted from *Avant*, which stated that "[t]he issues are defined by the pleadings of the parties before the court and, in the absence of special circumstances, the court normally determines the rights of the parties on the basis of the facts as they existed at the time the action was commenced." 853 F.2d at 143. As support for this statement, the Second Circuit in *Avant* included only a "but see" cite to Federal Rule of Civil Procedure 15(d), with a parenthetical stating that a "court has discretion to permit filing of [a] supplemental pleading alleging subsequent events where such filing would be just and would not unduly prejudice the opposing party." *Id*. at 143–44.

Federal Rule of Civil Procedure 15(d) provides that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." A supplemental pleading is, in substance, an amended pleading, but related to "events subsequent to the pleading to be altered." 6A Wright & Miller, *supra* § 1504. *Avant*'s "but see" cite to this rule suggests that where the interpleader complaint has been changed based on subsequent events, the purpose of determining rights at the time of filing is undermined. *See* The Bluebook: A Uniform System of Citation R. 1.2(c) (Columbia L. Rev. Ass'n et al. eds., 21st ed. 2020) ("but see" signal used when "[c]ited authority clearly supports a proposition contrary to the main proposition"); Karen A. Haase, *You Can Check Out Anytime You Like, but You Can Never Leave: Attorney Conflict of Interest and Imputed Disqualification Under Nebraska's New Bright Line*

---

[17] 19 F.3d at 253.

*Rule*, 74 Neb. L. Rev. 137, 160 (1995) ("The court's use of 'but see' as an introductory signal gives particular insight to the court's position ….").

In sum, when an interpleader fund has changed during litigation and applying the time-of-filing rule would produce an inequitable division of property, both the purposes of interpleader and equity demand that the time-of-filing rule be disregarded for purposes of determining priority. In such circumstances, consistent with *White* and *Avant*, the Court should consider priority as of the date the operative interpleader pleading was filed (or in the case of statutory interpleader cases, when the ultimate fund to be decided is deposited). The question, therefore, is whether the facts of this case satisfy this standard.

In this case, the language describing the interpleader fund in the initial interpleader complaint was identical to the language in the fourth amended complaint describing the interpleader fund. This language, for the reasons set forth above, defined the interpleader fund as BP attorney's fees payable to Smith as of the date of filing (December 15, 2015). In contrast, the interpleader fund as described in the fourth amended complaint (the operative pleading) represents attorney's fees made payable to Smith for an additional three-and-a-half-year period. Unsurprisingly, this fund, which stands at approximately $500,000, is approximately $497,000 larger than the fund initially described.

Because an interpleader fund must be "single" and "identifiable," the fund as initially created in this case could not have included the attorney's fees which, at the time of filing, were purely speculative and of uncertain value and which only became payable over the ensuing years. The addition of these fees to the interpleader fund is unlike the addition of the installment payments in *White*, which were fixed in amount and contractually guaranteed. In this sense, unlike the situation in *White*, the fund as it stands today is substantively different from the fund as it existed

at the time of filing. Therefore, applying the time-of-filing rule would create the inequitable result of freezing priority rights to a fund which was not only not before the Court at the time of filing, but which could not have existed at the time of filing. Under these circumstances, the Court concludes that the two funds are different. Accordingly, the Court must decide whether applying the time-of-filing rule would create an inequitable division of property.

As mentioned above, an inequitable division of property occurs when application of the time-of-filing rule would extinguish a claimant's priority which arose before the change in the interpleader fund. Here, application of the time-of-filing rule would extinguish the government's priority lien, which was perfected on November 3, 2016, approximately three years before the filing of the operative fourth amended complaint in this case. Ordinarily, this would be sufficient to find an equitable division of the interpleader fund.

However, the equity analysis is complicated by the fact that the right to the initial fund is necessarily incorporated in the right to the current fund such that determination of the latter would involve determination of the former (such that the non-government claimants could be deemed to have lost an interest in such funds). Nevertheless, two considerations convince this Court that a distribution based on the time of filing would be more inequitable than a distribution as of the time of the fourth amended complaint. First, given the difference in value between the fund at its inception and the fund as it currently exists, the government's loss in priority to the current fund is far more prejudicial than any party's loss in rights to the initial fund. *See Bricks Unlimited*, 672 F.2d at 1262 (considering prejudice to parties in making equitable division of property). Additionally, as parties to this litigation, any claimant concerned that the change in fund could have resulted in a loss of rights, could have asserted an objection to the amendment of the pleadings. *See generally United States v. Major Oil Corp.*, 583 F.2d 1152, 1158 (10th Cir. 1978)

18

("[O]ne is not entitled … to the remedy of interpleader (or the protections provided thereby) if the hazard which he seeks to avoid has been occasioned by his own act."). Thus, the Court concludes that applying the time-of-filing rule would create an inequitable division of the interpleader fund.

Therefore, considering the extraordinary circumstances of this case, the Court concludes that priority to the interpleader fund established by the fourth amended complaint should be determined as of the date the fourth amended complaint was filed. Because it is undisputed that the government's interest in the fund was first in time as of this date, the government is entitled to summary judgment. Furthermore, because the government's claim will exhaust the fund, the Court need not make a priority determination as to the remaining claimants. *See Crow v. Long*, 107 B.R. 184, 188 (E.D. Mo. 1989) ("Since the tax claims of the United States will completely exhaust the interpleaded fund, it is unnecessary to address the remaining claims of the parties."). Accordingly, the government's motion for summary judgment will be granted and Neilson's motion for summary judgment will be denied.

## VI
## Conclusion

The government's motion for summary judgment [97], including all relevant joinders,[18] is **GRANTED**. The government therefore is entitled to the interpleaded funds. Neilson's motion for summary judgment [84], including all relevant joinders,[19] is **DENIED**.

**SO ORDERED**, this 12th day of February, 2021.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

[18] [98][100][101][102][104][106][107][108][109].
[19] [111][112].